IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-75-TAV-DCP |
| | ) | |
| SHAWN BARAHAN FITTS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Sean Barahan Fitts asks [Doc. 167] the Court to suppress all evidence seized during the search of his residence in Douglasville, Georgia, pursuant to a search warrant. The Defendant contends that the search violated his rights under the Fourth Amendment, because the affidavit submitted in support of the search warrant fails to provide a nexus between the evidence sought and his home. He argues that the affidavit contains only conclusory and circumstantial evidence purporting to show his residence contained evidence of drug trafficking. The parties appeared for a motion hearing on January 22, 2020. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Norman D. McKellar represented Defendant Fitts, who was also present. At the conclusion of the hearing, the Court took the matter under advisement.

Based upon the Court's review of the search warrant affidavit, the parties' briefs, and the relevant case law, the undersigned finds that the search warrant provides probable cause to believe that evidence of drug trafficking would be found at the Defendant's residence.

Accordingly, the Court recommends that the Motion to Suppress Evidence Obtained as a Result of an Improper Search Warrant [Doc. 167] be denied.

## I. BACKGROUND AND POSITIONS OF THE PARTIES

On April 29, 2019, United Sates Magistrate Judge Alan J. Baverman of the Northern District of Georgia issued a search warrant [Doc. 168-2] for the search of the Defendant's residence at 5571 Hickory Stone Drive, in Douglasville, Georgia. The search warrant was based upon the application and thirty-four-page affidavit [Doc. 168-1] of Internal Revenue Service Criminal Investigation ("IRS-CI") Special Agent Danielle Barto. The search warrant allowed the executing officers to seize cocaine; drug paraphernalia and packaging materials; United States currency; records (paper or electronic) of drug sales, drug proceeds, travel, communications, and occupancy or ownership of the residence; firearms, ammunition, and other weapons; personal property including vehicles and jewelry; money counting and money processing paraphernalia; cellular telephones and the data contained therein; and photographic or other evidence of ties to drug trafficking organizations [Doc. 168-2].

Defendant Fitts argues [Doc. 168] that the search warrant affidavit fails to provide a nexus between the allegations of drug trafficking and his residence. He contends that the only connection to alleged drug-trafficking and his home are two assertions his half-brother Codefendant Brandon Thomas sent a text message to Codefendant Christopher Wyrick, on two occasions, while Thomas was "in the vicinity" of Defendant Fitts's residence. The Defendant also discounts a third reference to his address in a telephone conversation attributed to him. The Defendant contends that the context of the brief phone call reveals that he was not the male talking to Thomas. Additionally, the Defendant maintains that, even if he was on the call, nothing

2

connected the conversation to drug trafficking. Thus, the Defendant argues that the affidavit is devoid of facts linking him or his home to drug trafficking.

The Defendant also argues that the good faith exception to the warrant requirement does not apply in this case. He maintains that no reasonable officer would believe the search warrant was valid, based upon the absence of any facts about him in the affidavit and the multiple layers of inferences necessary to create a nexus to his residence.

The Government responds [Doc. 206] that Agent Barto's substantial affidavit provides probable cause to believe evidence of drug trafficking would be found at the Defendant's home. It argues that the affidavit describes multiple drug transactions between Brandon Thomas, of Douglasville, Georgia, and Christopher Wyrick, of Knoxville, Tennessee. It contends that geolocation data reveals that Thomas stopped at the Defendant's house multiple times both before and after drug transactions in Knoxville, Tennessee. It argues that the affidavit also sets out a telephone conversation between Thomas and the Defendant that relates to a drug transaction. The Government contends that the totality of the circumstances in the affidavit provide probable cause to believe evidence of drug trafficking would be found at the Defendant's house. Alternatively, the Government argues that the good faith exception applies in this case because the search warrant was sufficiently particular and not facially deficient. Thus, it maintains that the executing officers reasonably relied on the search warrant issued by the magistrate judge.

## II.    ANALYSIS

The Fourth Amendment secures the right to be free from unreasonable searches and seizures. A judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend.

3

Case 3:19-cr-00075-KAC-DCP   Document 239   Filed 03/16/20   Page 3 of 14
PageID #: 1413

IV. The Defendant contends that although his residence was searched pursuant to a search warrant, the search warrant was not based upon probable cause. The Court examines whether probable cause exists to support the issuance of the search warrant for the Defendant's residence and whether law enforcement acted in good faith.

### A. Probable Cause

Defendant Fitts argues that Agent Barto's affidavit does not establish that evidence of drug trafficking or money laundering would be found in his residence. "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.) (en banc), *cert. denied*, 543 U.S. 851 (2004). In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "[T]his nexus may be established by the nature of the items and normal inferences of where a person would keep such items." *United States v. Hawkins*, 278 F. App'x 629, 634 (6th Cir.), *cert. denied*, 555 U.S. 1019 (2008). An officer's training and experience about where criminals keep contraband or proceeds is relevant to the probable cause determination, but it alone cannot provide a nexus between the location to be searched and the crime. *See United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994).

In determining whether an affidavit establishes a nexus, the undersigned begins by observing that the issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), *cert. denied* 531 U.S. 907 (2000). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the

4

Case 3:19-cr-00075-KAC-DCP   Document 239   Filed 03/16/20   Page 4 of 14
PageID #: 1414

circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge, *i.e*, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied,* 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

In the instant case, IRS-CI Special Agent Danielle Barto provided a thirty-four-page affidavit [Doc. 168-1] in support of search warrants for the residences of Brandon Thomas and Defendant Fitts, in order to seize evidence and fruits of drug trafficking and money laundering. In the affidavit, Agent Barto asserts that the Defendant, Brandon Thomas, and Christopher Wyrick are involved in a cocaine-trafficking organization in Knox County, Tennessee, and Douglasville, Georgia [Doc. 168-1, ¶10]. The affidavit relates that Thomas supplies cocaine to Wyrick, who along with Jason Stansberry, distributes cocaine in the Knoxville, Tennessee area [Doc. 168-1, ¶10]. The affidavit states that Defendant Fitts, Thomas's half-brother, is Thomas's source of supply for cocaine [Doc. 168-1, ¶10]. Based upon intercepted telephone conversations and messages between Thomas and Wyrick and geolocation data on their cellular telephones, the affidavit relates that Wyrick calls Thomas to arrange a cocaine purchase and that Thomas drives from Douglasville to Knoxville to deliver the cocaine to Wyrick [Doc. 168-1, ¶11]. The affidavit relates that immediately before and after driving to Knoxville to deliver cocaine, Thomas "typically" stops by Defendant Fitts's residence [Doc. 168-1, ¶11]. Agents believe that Thomas is picking up the cocaine at Fitts's house before driving to Knoxville and bringing the drug proceeds to Fitts's house upon his return [Doc. 168-1, ¶ 11].

5

Defendant Fitts argues that the search warrant affidavit fails to provide facts to back up Agent Barto's conclusion that he participated in the drug trafficking organization or to show a nexus between the drug trafficking allegedly occurring between Thomas and Wyrick and his residence. He contends the circumstantial evidence that Thomas sent two text messages to Wyrick, while "in the vicinity of" his house, fails to support the affiant's conclusion that Thomas was picking up cocaine from and delivering proceeds to his house. The Court disagrees.

The affidavit provides two instances in which Thomas sends a text message relating to a drug transaction to Wyrick, while at or near the Defendant's residence. The affidavit explains that law enforcement receives the geolocation data in the form of coordinates with a margin of error of fourteen (14) meters [Doc. 168-1, ¶20 n.5]. Thus, when discussing geolocation data, the affidavit "refer[s] to the general vicinity and not the precise coordinates" [Doc. 168-1, ¶20 n.5]. The affidavit states that around 8:40 p.m., on March 2, 2019, Thomas's cellular telephone was in the vicinity of his residence in Douglasville, Georgia [Doc. 168-1, ¶20]. At 9:30 p.m., Thomas's phone was in the vicinity of Defendant Fitts's residence [Doc. 168-1, ¶20]. Approximately fifteen minutes later, at 9:43 p.m., Wyrick received a text message from Thomas, stating "'Bout to slide to the casino,'" which Agent Barto concluded, based on her "training, experience, and knowledge of the investigation," is a coded message[1] that Thomas was about to leave for Knoxville to deliver cocaine [Doc. 168-1, ¶21]. Based upon the photographs of Defendant's house with the overlay of the property lines contained in Attachment A2 to the affidavit [Doc. 168-1, p.36], the Court concludes the text message was likely sent from inside or within the curtilage of Defendant Fitts's

---

[1] Earlier in the affidavit, Agent Barto relates that, based upon her training and experience in narcotics investigations, she knows that drug traffickers "use guarded, vague or coded language when discussing and planning the distribution of controlled substances" [168-1, ¶8(l)].

6

home. The Court also notes based upon the attached photograph that the Defendant's home is in a subdivision and not within fourteen meters of a main thoroughfare or a business.

The affidavit also relates that on the evening of March 11, 2019, Thomas traveled to Wyrick's residence in Knoxville, Tennessee, arriving around 11:30 p.m., which is when Thomas called Wyrick to say he was outside [Doc. 168-1, ¶26]. The next morning, at 5:21 a.m., on March 12, 2019, the geolocation data showed that Thomas's phone was in the vicinity of the Defendant's residence [Doc. 168-1, ¶27]. A few minutes later, at 5:25 a.m., Wyrick received a text message from Thomas stating that Thomas had "made it" but asking whether he gave Wyrick "'500 too much . . . I'm missing 500 from somewhere'" [Doc. 168-1, ¶ 27]. Based upon her training, experience, and knowledge of the investigation, Agent Barto interpreted that Thomas "thought he was $500 short when he returned to Douglasville and counted the money he received from WYRICK the night before" [Doc. 168-1, ¶ 27].[2] At 5:54 a.m., Thomas's phone was in the vicinity of Thomas's house [Doc. 168-1, ¶ 27]. The timing and location of these events supports an inference that Thomas counted the drug proceeds from his sale of cocaine to Wyrick at Defendant Fitts's house. Moreover, Thomas's statement to Wyrick that he "made it," sent from the Defendant's residence, indicates that the Defendant's residence was his destination to take the drug proceeds.

At the motion hearing, counsel for the Defendant argued the fact that Thomas was sending text messages in the vicinity of the Defendant's house does not mean that the Defendant knew about or was involved in the drug trafficking. He asserted that Thomas could have stopped

---

[2] Agent Barto's interpretation is supported by a subsequent text message: The following day, Thomas texted Wyrick again, relating that "'It was right when we did it at the house but wrong when I got home'" [Doc. 168-1, ¶ 27]. Agent Barto inferred that Thomas believed the amount of the cocaine payment was correct when he and Wyrick counted the money at Wyrick's house but Thomas was missing $500 when he returned to Georgia [Doc. 168, ¶ 27].

7

by to visit his brother before traveling to Knoxville on March 2, 2019. Additionally, defense counsel maintained that Thomas could have counted his drug proceeds at any time between leaving Knoxville and arriving in the vicinity of the Defendant's house on March 12, 2019, pointing out that the affidavit does not state where else Thomas went after leaving Wyrick's house.

The Court finds the timing of Thomas's arrival at the Defendant's residence at 5:21 a.m., on March 12, 2019, and his text message to Wyrick at 5:25 a.m. that day suggests that Thomas called Wyrick right after counting the drug proceeds at the Defendant's house. Additionally, in the section of the affidavit relating her knowledge of how drug traffickers operate, Agent Barto relates that, based upon her training and experience, drug traffickers conceal evidence of drug trafficking and drug proceeds in secure locations with easy access, such as their homes [Doc. 168-1, ¶8(f)-(g)]; that drug traffickers "often separate their caches of drugs by keeping them and drug paraphernalia in the residence of close associates" [Doc. 168-1, ¶8(k)]; -(g)]; and that drug traffickers commonly store drug proceeds and records in multiple locations, "so that one search by law enforcement officials will not result in the loss of all of their records and currency" [Doc. 168-1, ¶8(o)]. This general knowledge about how drug traffickers operate lends support to Agent Barto's conclusion that Thomas was picking up cocaine from and bringing drug proceeds to his brother's home.

The final mention of the Defendant's residence in the affidavit occurs in paragraph 38. The affidavit states that around 2:52 p.m., on April 20, 2019, Thomas called Defendant Fitts, "who was using an unknown male's phone" [168-1, ¶38]. Thomas told Fitts to "'tell Shawn that . . . dude said he . . . need[s] me to text over his address,'" relating that the individual was currently at his house and did not want to leave until he received the address [Doc. 168-1, ¶38]. The affidavit states that the Defendant "replied, 'Come on man . . . he got the address,'" to which Thomas

8

responded, "I'm just saying what he told me'" [168-1, ¶38]. The affidavit relates that the Defendant then said, "'Tell him 5571. You can give him the 5571 Hickory,'" and Thomas said, "'Alright'" [168-1, ¶38]. Based upon her knowledge of this investigation, along with her training and experience, Agent Barto interpreted this exchange as Thomas telling the Defendant "that their source of supply had arrived in town and needed the address to deliver drugs" [168-1, ¶38]. Agent Barto further explained that *Thomas* "was agitated by the questions because the source knows the address; however, provides the address of '5571 Hickory,'" which is the Defendant's address [168-1, ¶38]. The Court finds based upon the telephone conversation quoted in paragraph 38, the affidavit incorrectly states that Thomas was the one who provided the address. Instead, the quoted conversation attributes the statement of the address to Defendant Fitts.

The Defendant argues that the affidavit incorrectly states that the phone conversation set out in paragraph 38 was between him and Thomas, because the call is to an unidentified individual's phone number and because Thomas tells the person on the other line to "tell Shawn" the information. He contends that Thomas would not say "tell Shawn," if he was talking to his brother Shawn Fitts. However, earlier in the affidavit, Agent Barto relates that she knows drug traffickers "use guarded, vague or coded language when discussing and planning the distribution of controlled substances" in order to throw off police [168-1, ¶8(l)]. The Court finds that Thomas could have said "tell Shawn" to disguise the fact that he was talking to Shawn, and Fitts could have used a cellular telephone not linked to him in order to avoid being connected with the drug trafficking organization. The Court agrees that the affidavit is silent on how the agent(s) monitoring the calls intercepted from Thomas's phone knew that Defendant Fitts was speaking. However, even if it was not Fitts, whoever was on the call with Thomas identified Fitts's address

9

as the location to which the source should deliver the drugs. This creates a link between the Defendant's address and evidence of drug trafficking.

"The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). Here, the Court finds that specific and concrete evidence connects the Defendant's residence with the drug trafficking organization. Geolocation data shows that Thomas sent two text messages about drug transactions from the Defendant's house or curtilage. Upon his return from transporting cocaine to Wyrick on March 12, 2019, Thomas texted Wyrick from the Defendant's house that Thomas had "made it" to his destination to deliver the proceeds. Finally, in an April 20, 2019 telephone conversation, members of the drug trafficking organization specified the Defendant's address as the location to which the source should deliver cocaine. The Court finds these specific and concrete connections, along with Agent Barto's knowledge of the investigation, provide probable cause to believe that evidence of drug trafficking would be found at Defendant Fitts's residence. The Court finds the Defendant's motion to suppress the evidence seized from the search of his residence should be denied.

### B. Good Faith Exception

Because the affidavit provides probable cause for the search of Defendant Fitts's residence, the Court need not determine whether the executing officers relied on the search warrant in good faith. However, in the event that the District Judge disagrees and finds the nexus lacking, the Court examines briefly whether the exclusionary rule should apply in this case.

"The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible." *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000); *see also Mapp v. Ohio*, 367 U.S. 643, 654 (1961) (holding that "all evidence

obtained by an unconstitutional search and seizure [is] inadmissible in federal court"); *Weeks v. United States*, 232 U.S. 383, 398-99 (1914) (establishing the exclusionary rule as the remedy for violations of the Fourth Amendment). However, the exclusion of evidence is "a judicially created rule . . . 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *United States v. Herring*, 129 S. Ct. 695, 699 (2009) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The exclusionary rule applies only where "its remedial objectives are thought most efficaciously served," *Arizona v. Evans*, 514 U.S. 1, 11 (1995), and where it "'results in appreciable deterrence.'" *Herring*, 129 S. Ct. at 700 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). "[T]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs." *Herring*, 129 S. Ct. at 700 (quoting *Illinois v. Krull*, 480 U.S. 340, 352-53 (1987)). In the end, the decision to suppress evidence "turns on the culpability of the police and the potential for exclusion to deter wrongful police conduct." *Id.* at 698.

The Supreme Court has recognized a "good faith" exception to the exclusionary rule when an officer relies on a search warrant that is later found to be unsupported by probable cause. *Leon*, 468 U.S. at 922. Typically, when an officer obtains a search warrant from a judge, there is no culpable police behavior to deter. *Id.* at 920-21. It is the judge's job to determine whether the affidavit provides probable cause to issue the search warrant and whether the form of search warrant comports with the Fourth Amendment. *Id.* at 921. However, the officer's reliance on the judge's determination of probable cause and technical compliance "must be objectively reasonable." *Id.* at 922. Thus, the good faith exception does not apply (1) when the affiant misleads the issuing judge with false information in the affidavit, (2) when the judge "wholly abandon[s]" his or her judicial role and acts as an extension of the police, (3) when the affidavit is

11

totally lacking in any "indicia of probable cause as to render official belief in its existence entirely unreasonable," and (4) when the warrant is deficient on its face such "that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. In the instant case, the Defendant travels under the third reason,[3] arguing that any reasonable officer would have realized that the affidavit was wholly deficient in probable cause and, instead, requires multiple layers of inference to connect his residence to drug activity.

The Defendant relies on *United States v. Laughton*, in which our appellate court held that the executing officers did not reasonably rely on the search warrant. 409 F.3d 744, 749-51 (6th Cir. 2005). In *Laughton*, the prosecution conceded that the search warrant lacked probable cause for a nexus between the defendant's residence and evidence of drug trafficking. *Id.* at 752 (Gilman, J., dissenting). The district judge found that the four-paragraph affidavit in support of the search warrant, although lacking in probable cause, was not a "bare bones" affidavit, and, thus, concluded that the executing officer reasonably relied on the search warrant. *Id.* at 749.

The Sixth Circuit disagreed with the district judge's finding of good faith. *Id.* It observed that in the cases in which the good faith exception is properly applied, the affidavit contains "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id.* In contrast, the court found that the affidavit

---

[3] At the motion hearing, Mr. McKellar argued that the affidavit is "filled with mistakes," and, thus, the remedy should be exclusion in order to deter law enforcement from making false or reckless statements in affidavits. However, Mr. McKellar clarified that he was not saying that Agent Barto was dishonest in the affidavit. The Court finds that the Defendant did not show the affidavit to be full of mistakes. Instead, the Court finds that the affidavit contains two sentences at the end of paragraph 38(a) that mistakenly identify Thomas as the individual who gave the Defendant's address in the April 20 phone conversation. However, the Court finds these two sentences are not misleading, because the previous paragraph identifies Defendant Fitts as giving the address. Thus, the Court does not take the Defendant to be arguing that the affiant misled Magistrate Judge Baverman by including false information in the affidavit.

12

before it "simply listed the address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against Laughton." *Id.* at 751. The "acontextual allegations" were that the confidential informant had made methamphetamine purchases in the past, without saying from whom or where, and that the informant had seen drugs in a residence or on the defendant's person, without saying which residence or when. *Id.* at 751. The court found that an experienced officer might rely in good faith on an inference necessary to fill in the gaps in probable cause in a detailed affidavit, but "filling the gaps in the present case would require a number of inferences, even inferences drawn upon inferences, in order to support objectively reasonable reliance by an officer executing the resulting warrant who was not familiar with the underlying facts." *Id.* at 750. Thus, it concluded that "[n]o reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable." *Id.* at 751.

The Court finds that *Laughton* is distinguishable from this case. In *Laughton*, the court defined a "bare bones affidavit" as containing "only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]'" *Id.* at 748 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). The affidavit in this case is not a bare bones affidavit. Instead, Agent Barto's affidavit is detailed, and the drug-trafficking conspiracy is established by geolocation data and intercepted telephone calls and text messages. The information linking the drug trafficking to the Defendant's residence is not "acontextual," as the Defendant argues, but, instead, is set within the context of the drug-trafficking conspiracy that Agent Barto describes in some twenty pages [Doc. 168, pp. 13-33]. Accordingly, the Court finds that law enforcement reasonably relied on the search warrant and the good faith exception should apply in this case.

13

### III. CONCLUSION

After carefully considering the parties' briefs and argument, the search warrant affidavit, and the relevant legal authorities, the Court finds that law enforcement properly searched the Defendant's residence pursuant to a valid search warrant. Accordingly, the undersigned respectfully **RECOMMENDS** that the Motion to Suppress Evidence Seized as a Result of an Improper Search [Doc. 167] be denied.[4]

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).