# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-75-1 |
| | ) | REEVES/POPLIN |
| SHAWN BARAHAN FITTS | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of the Report and Recommendation ("R&R") [D. 239] issued by the Honorable Debra C. Poplin, United States Magistrate Judge, in which she recommends that Defendant Shawn Barahan Fitts's Motion to Suppress [D. 167] be denied.

Fitts's motion to suppress seeks to exclude all evidence seized during the execution of a search warrant at Fitts's residence located at 5571 Hickory Stone Drive, Douglasville, GA 30135. [D. 167]. Following briefing and a hearing on the matter, Judge Poplin issued the R&R, finding that the affidavit filed in support of the search warrant application provided probable cause for the search and, even if probable cause was not established, the "good faith exception" was applicable, saving the evidence from suppression. Fitts filed two objections to the R&R [D. 254],[1] and the matter is ripe for this Court's review.

As required by 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b), the Court has now undertaken a *de novo* review of those portions of the R&R to which Defendant objects. Fed. R. Crim. P. 59(b)(3). For the reasons that follow, Fitts's objections [D. 254] are overruled, and the Court accepts the R&R [D. 239] in full. Consequently, Fitts's motion to suppress [D. 167] is denied.

---

[1] Fitts's original filing of objections, [D. 252], had to be re-filed as for administrative reasons. However, the documents, [D. 252, 254], are substantively the same.

## I.    Background

As the R&R recounts:

> On April 29, 2019, United States Magistrate Judge Alan J. Baverman of the Northern District of Georgia issued a search warrant [Doc. 168-2] for the search of the Defendant's residence at 5571 Hickory Stone Drive, in Douglasville, Georgia. The search warrant was based upon the application and thirty-four-page affidavit [Doc. 168-1] of Internal Revenue Service Criminal Investigation ("IRS-CI") Special Agent Danielle Barto. The search warrant allowed the executing officers to seize cocaine; drug paraphernalia and packaging materials; United States currency; records (paper or electronic) of drug sales, drug proceeds, travel, communications, and occupancy or ownership of the residence; firearms, ammunition, and other weapons; personal property including vehicles and jewelry; money counting and money processing paraphernalia; cellular telephones and the data contained therein; and photographic or other evidence of ties to drug trafficking organizations [Doc. 168-2].

[D. 239, p. 2].  In relevant part, the affidavit filed by Agent Barto indicates that Fitts is a half-brother of Codefendant Brandon Thomas. [D. 168-1. ¶ 10].  Thomas sent a text message to Codefendant Christopher Wyrick on two occasions while "in the vicinity of Fitts's residence"— 5571 Hickory Stone Drive. [*Id.*, ¶¶ 21, 25–27].  Additionally, Thomas made a call to an unidentified male in which Thomas tells the unidentified male to "Tell Shawn" that an individual needed an address to make a delivery. [*Id.*, ¶ 38].  A second male, which the affidavit stats is Fitts, replies "c'mon man," but then instructs Thomas to tell him "5571 Hickory." [*Id.*].  Agent Barto inferred that this was a reference to 5571 Hickory Stone Drive, Fitts's residence. [*Id.*, ¶ 38(a)].

On December 6, 2019, Fitts filed a motion to suppress the fruits of the search at his residence at 5571 Hickory Stone Drive. [D. 167, 168].  The government responded on December 27, 2019 [D. 206], arguing that the search warrant affidavit provided probable cause for the warrant and subsequent search and, even if it did not provide probable cause, the good faith exception saves the evidence from suppression.  Judge Poplin conducted a hearing on the motion on January

22, 2020. [D. 222]. On March 16, 2020, Judge Poplin issued a report and recommendation advising the Court that the search was supported by probable cause and, should this Court disagree, law enforcement acted in good faith reliance on the search warrant and the evidence should not be suppressed. [D. 239]. On March 27, 2020, Fitts filed two objections to the R&R, challenging the conclusions that the search was supported by probable cause and that the good faith exception would prevent suppression, even if there was not probable cause. [D. 254]. On April 10, 2020, the government responded, electing to stand on its previously filed briefs. [D. 266].

## II.    Objections

Fitts raises two objections to the R&R. First, Fitts objects to the finding that the affidavit attached to the search warrant application provided probable cause for the search. Second, Fitts objects to the finding that, even if there was not probable cause, the "good faith exception" applies and the evidence should not be suppressed. In essence, both arguments rest on Fitts's contention that the affidavit did not provide a nexus between the illegal activity and the place to be searched— either a nexus that established probable cause or a "minimally sufficient nexus" needed for the good faith exception to apply. *See United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir.) (en banc), *cert. denied*, 140 S. Ct. 414, 205 L. Ed. 2d 233 (2019). The Court will address each of Fitts's objections in turn.

### A.  Objection 1: Probable Cause

Fitts objects to the R&R's conclusion that the affidavit established probable cause for the subsequent search of 5571 Hickory Stone Drive.

### 1.  Standard

The Fourth Amendment prohibits a judge from issuing search warrants unless there is probable cause. *See* U.S. Const. amend. IV. An officer requesting a search warrant demonstrates

3

probable cause "when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Christian*, 925 F.3d at 311–12 (quoting *Tagg*, 886 F.3d at 585)).

In its application, probable cause is a "fluid concept," meaning that it is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see Adams v. Williams*, 407 U.S. 143, 147 (1972) ("One simple rule will not cover every situation."); *see also Florida v. Harris*, 568 U.S. 237, 243–44 (2013) (stating that the "test for probable cause is not reducible to 'precise definition or quantification'" (quotation omitted)). Consequently, courts look for "the kind of 'fair probability' on which 'reasonable and prudent [people], not legal technicians, act,'" without resorting to "rigid rules, bright-line tests, and mechanistic inquiries." *Harris*, 568 U.S. at 244 (quotations omitted). This means that, when deciding whether a search warrant affidavit establishes probable cause, issuing courts rely on "common-sense conclusions about human behavior." *Gates*, 462 U.S. at 231; *see Harris*, 568 U.S. at 244 (describing a "practical and common-sensical standard" for probable cause); *Christian*, 925 F.3d at 310 (stating that "[a]ffidavits are not required to use magic words" (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). The "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Tagg*, 886 F.3d at 586 (quoting *Allen*, 211 F.3d at 975).

Because "[n]ot all search warrant affidavits include the same ingredients," a court uses a "totality of the circumstances approach." *Christian*, 925 F.3d at 312 (quoting *United States v. Hines*, 885 F.3d 919, 921–22 (6th Cir. 2018)). In contrast, a "divide-and-conquer approach is

improper," because "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *Id.* (quoting *Wesby*, 138 S. Ct. at 589). Indeed "[i]t is the mix that courts review to decide whether evidence generated from the search may be used or must be suppressed." *Id.* (quoting *Hines*, 885 F.3d 921–22). Stated differently, with search warrant affidavits, "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Id.* at 311 (citing *Wesby*, 138 S. Ct. at 588).

Moreover, when, as here, a magistrate judge has reviewed the affidavit and issued a search warrant, a reviewing court "does not write on a blank slate," *Tagg*, 886 F.3d at 586, and "the magistrate's probable-cause determination 'should be paid great deference.'" *Christian*, 925 F.3d at 311 (quoting *Gates*, 462 U.S. at 236). Accordingly, reviewing courts do not "reweigh the assertions in an affidavit" but ask "whether the magistrate had a substantial basis for his conclusion." *Id.* at 310 (quoting *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017)). Likewise, the reviewing court's review "is limited to the information presented in the four corners of the affidavit." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *see also United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012) ("Looking only to the four corners of the affidavit, . . . we will find probable cause to support a search warrant if the affidavit establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" (citing *Gates*, 462 U.S. at 238)); *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) ("[I]nformation known to the officer but not to conveyed to the magistrate is irrelevant.").

Put simply, "[p]robable cause 'is not a high bar' to clear." *Id.* at 311 (quoting *Wesby*, 138 S. Ct. at 586).

### 2. Application

Here, Fitts accuses the R&R of "look[ing] beyond the four corners of the affidavit and mak[ing] inferences in order to support her conclusions as the evidence, as it pertains to Fitts, is based on nothing more than mere conclusory and circumstantial evidence." [D. 254, pp. 3–4]. The Court does not agree

At the outset, the Court notes that Fitts's objection depends upon the type of "hypertechnical[,] . . . line-by-line scrutiny," *Christian*, 925 F.3d at 311 (quoting *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)), of an affidavit explicitly forbidden by the Supreme Court. *Id.* (citing *Gates*, 462 U.S. at 235–36). In other words, Fitts lines up each "ingredient" in the affidavit and argues that the ingredient does not provide probable cause, rather than addressing what the "mix" of ingredients does establish. *Christian*, 925 F.3d at 312.

First, the Court will address Fitts's attack on the R&R's handling of the affidavit's ingredients. Second, the Court will discuss the probable cause found in the mix of those ingredients.

### a. March 2, 2019 Text Message

First, Fitts argues that the R&R "had to look beyond the four corners of the affidavit and make inferences," [D. 254, p. 3], regarding the first ingredient: Thomas's text message sent to Wyrick on March 2, 2019 at 9:43 p.m. Thomas sent the message "from the vicinity" of 5571 Hickory Stone Drive—that is, geo-located to coordinates around the residence with a margin of error, such as "14 meters,"—stating that he is "Bout to slide to the casino." [D. 168-1, ¶ 21]. Fitts claims that "[n]o other facts were presented tying Mr. Fitts to any alleged criminal activity," and that the R&R's conclusion that the text message was "likely sent from inside or within the curtilage of Defendant Fitts' home," [D. 239, pp. 6–7], "alone does not create a nexus between Fitts and any

criminal activity." [D. 254, p. 3 (citing *Laughton*, 409 F.3d at 747)].  But Fitts omits key facts and misses that the nexus must be found between "the illegal activity and *the place to be searched*." *Christian*, 925 F.3d at 313 (citations omitted) (emphasis added); *see also United States v. Brooks*, 594 F.3d 488, 492–93 (6th Cir. 2010) ("The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." (quoting *United States v. Frazier,* 423 F.3d 526, 532 (6th Cir. 2005))).

Fitts omits that "[i]nvestigators found, using an open source website, that this residence has been or is being used as a rental property and that it was reported as a 'household'" [D. 168-1, ¶ 20 n.6].  Fitts omits that, according to Agent Barto, [i]ndividuals engaged in the distribution of controlled substances will . . . [use] guarded, vague or coded language when discussing and planning the distribution of controlled substances," [*id.* , ¶ 8(l)], and Agent Barto "believe[d], based on [her] training, experience, and knowledge of this investigation, that THOMAS told WYRICK, in a coded message, that he is about to depart for Knoxville, Tennessee to deliver the cocaine." [*Id.*, ¶ 21].  The issuing magistrate judge was entitled to rely on Agent Barto's conclusion as an experienced law enforcement officer. *See United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) ("[C]ourts may afford 'considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found[.]'" (quotation omitted)).

Fitts speculates that the R&R's conclusion requires an inference that "it was impossible for him to retrieve the cocaine from any other source between 8:40 p.m. and 9:30 p.m., or that there was no other conceivable reason for Thomas to visit Fitts other than to supply Thomas with cocaine despite the fact that they are brothers." [D. 254, pp. 3–4].  Such a specific inference is not

7

necessary, especially in view of the other ingredients in the affidavit. Moreover, Agent Barto stated that, in her experience, (1) "drug traffickers/manufacturers usually keep controlled substances [and accompanying materials] . . . at places under their control or the control of their trusted associates and in close proximity to the locations of the controlled substances themselves[,]" (2) "often separate their caches of drugs by keeping them and drug paraphernalia in the residence of close associates[,]" and (3) "maintain safes or other locked containers, false compartments in the homes and businesses, places under their control and in the homes and businesses of trusted associates for the storage of money from the sale of controlled substances." [D. 168-1, ¶ 8(k), (o)].

To be sure, "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *Christian*, 925 F.3d at 311 (quoting *Wesby*, 138 S. Ct. at 589). Indeed, "[i]t is the mix that courts review to decide whether evidence generated from the search may be used or must be suppressed." *Id.* at 312 (quoting *Hines*, 885 F.3d 921–22). The text message sent from the vicinity of 5571 Hickory Stone Drive about a likely departure to deliver drugs contributes to the nexus between 5571 Hickory Stone Drive and the suspected illegal activity.

### b. March 12, 2019 Text Message

Second, Fitts challenges the R&R's handling of the second ingredient: Thomas's text message sent to Wyrick on March 12, 2019 at 5:25 a.m. In the evening of March 11, Thomas traveled from Douglasville, Georgia to Knoxville, Tennessee, as documented in a series of phone conversations and text messages. [D. 168-1, ¶¶ 25–27]. Thomas returned to Douglasville, Georgia in the early morning hours of March 12 and geo-location data placed Thomas again "in the vicinity" of 5571 Hickory Stone Drive at 5:21 a.m. [*Id.*]. A few minutes later, at 5:25 a.m.,

Thomas sent a text message to Wyrick, saying, "Yooo. I made it but did I give u 500 too much . . . I'm missing 500 from somewhere." [*Id.*, ¶ 27]. In the affidavit, Agent Barto stated, "I believe, based on my training and experience and my knowledge of this investigation, that THOMAS thought he was $500 short when he returned to Douglasville and counted the money he received from WYRICK the night before." [*Id.*, ¶ 27].[2] Based on this information, the R&R states that "the timing of Thomas's arrival at the Defendant's residence at 5:21 a.m., on March 12, 2019, and his text message to Wyrick at 5:25 a.m. that day suggests that Thomas called Wyrick right after counting the drug proceeds at the Defendant's house." [D. 239, p. 7].

Fitts counters that this conclusion "requires several inferences to establish probable cause to search Mr. Fitts' residence and fails to support an inference that evidence of wrongdoing would be found in Fitts's residence." [D. 254, p. 4]. Fitts suggests that "[o]ne must infer that Thomas did not count the money at any moment between the time he delivered the cocaine to Wyrick around 11:20 p.m. and arrived in Douglasville, GA at 5:21 a.m. (despite it only being a three and a half hour drive between Knoxville and Douglasville), or that Thomas didn't send the text somewhere outside Mr. Fitts' residence or after leaving Mr. Fitts' residence." [*Id.*, pp. 5–6 (citing D. 168-3)]. If the message was sent inside the house, Fitts argues that "one must infer that he was present and had knowledge that Thomas sent a text to Wyrick, or that money was counted in his presence at his residence and he had knowledge or ties to the source of the funds based on the few facts alleged in the Affidavit." [*Id.*, p. 6]. Because the search warrant affidavit does not *explicitly* state that money was counted at 5571 Hickory Stone Drive or that Fitts had "any connection to the

---

[2] The affidavit also includes subsequent communication, when, at 12:14 p.m. the next day, Thomas texted, "Naw, it's alright, I don't know how it happened. It was right when we did it at the house but wrong when I got home, but it's cool bro." [D. 168-1, ¶ 27]. Agent Barto stated, "I believe, based on my training and experience and my knowledge of this investigation, that THOMAS thought the payment was correct when they counted it together at WYRICK's house but THOMAS was now missing $500 when he returned home. However, WYRICK did not need to worry because THOMAS thought the missing money was his (THOMAS's) mistake." [*Id.*].

9

transaction between Wyrick or Thomas, or that Fitts had any knowledge of involvement with the transaction," [*id.*, p. 5], Fitts asserts that "one must fill in the gaps by drawing 'a number of inferences, even inferences drawn upon inferences' in order to show that there was probable cause to search Mr. Fitts's residence." [*Id.* (citing *Laughton*, 409 F.3d at 750; *McPhearson*, 469 F.3d at 524–25). Lastly, Fitts argues that, "[l]ike McPhearson, without "connecting [Mr. Fitts] to drug trafficking, the affidavit . . . cannot support the inference that evidence of wrongdoing would be found in [his] home. [*Id.* (quoting *McPhearson*, 469 F.3d at 524–25)].

Fitts's challenge to the second ingredient is also unavailing. First, for this message to contribute to the probable cause finding, it is not necessarily essential that "the text was sent in the presence of Mr. Fitts, under his authority, or that he had any knowledge of the transaction between Wyrick and Thomas." [D. 254, p. 6). Again, the nexus must be found between "the illegal activity and *the place to be searched*." *Christian*, 925 F.3d at 313 (citations omitted) (emphasis added). While the Fourth Amendment certainly encompasses the preservation of the "privacy and security of individuals against arbitrary invasions of government officials," *Camara*, 387 U.S. at 528, "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *United States v. Pinson*, 321 F.3d 558, 564–65 (6th Cir. 2003) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555–56 (1978)).

Second, the conclusion reflected in the R&R involves reasonable inferences based on facts in the affidavit, not "a number of inferences" or "inferences drawn upon inferences" as Fitts suggests. [D. 254, p. 6 (quoting *Laughton*, 409 F.3d at 750)]. Fitts complains that the message about money it was only sent from "the vicinity" of 5571 Hickory Stone Drive rather than conclusively within the home, but the affidavit makes clear that this wording is used for simplicity,

10

rather than recounting specific GPS coordinates and margins of error. Fitts expresses suspicion about the location of Thomas's money-counting due to the difference between his estimated travel time between Douglassville and Knoxville—three and a half hours—and the time between Thomas's Knoxville arrival and the message sent from Douglasville—roughly six hours. Fitts suggests that the money could have been counted at any point between Knoxville and 5571 Hickory Stone Drive. Though the affidavit does not necessarily rule out this counter-hypothetical, the Court's job is to look at "what the affidavit *does* show," not "focus[] on what the affidavit does not contain." *Christian*, 925 F.3d at 311 (emphasis added). Likewise, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 311–12 (quoting *Tagg*, 886 F.3d at 585)). The factual context of the text message contained in the affidavit make it reasonable to conclude that Thomas's message in this instant was sent from 5571 Hickory Stone Drive, pertained to money exchanged in a drug transaction, and was sent immediately or soon after counting the money at issue. "[P]robable cause determinations necessarily involve inferences, and inferences are perfectly acceptable provided that they are based on facts in the affidavit." *United States v. Hython*, 443 F.3d 480, 489 (6th Cir. 2006).

Again, "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *Christian*, 925 F.3d at 311 (quoting *Wesby*, 138 S. Ct. at 589). Thomas's March 12, 2019 text message, which was sent from the vicinity of 5571 Hickory Stone Drive and likely pertained to drug transaction accounting, contributes to the nexus between 5571 Hickory Stone Drive and the suspected illegal activity.

### c. April 20, 2019 Call

Third, Fitts challenges the R&R's handling of the final ingredient—a call made around 2:52 p.m. on April 20, 2019. The affidavit states that Thomas "made an outgoing call to FITTS,

who was using unknown male's phone. [D. 168-1, ¶ 38]. The affidavit's recounting of the call is as follows:

> During the call, THOMAS said, "Hey, tell Shawn that, um . . . dude said he, uh, he . . . uh, need me to text over his address and then . . . since I don't that he at the house . . . he at his house right now. He waiting on the address before he leaves . . . he at the house. He said he just go to this house . . . at his house . . . but he didn't want to leave because he needed the address." FITTS replied, "Come on man . . . he got the address." THOMAS said, "I'm just saying what he told me." FITTS replied, "Tell him 5571. You can give him the 5571 Hickory." THOMAS said, "Alright."

[*Id.*]. Interpreting the contents and context of the call, Agent Barto states:

> I believe based on my training, experience, and knowledge of this investigation, that THOMAS told FITTS that their source of supply had arrived in town and needed the address to deliver drugs. THOMAS was agitated by the question because the source knows the address; however, provides the address of "5571 Hickory." I believe THOMAS was referring to 5571 Hickory Stone Drive, Douglasville, Georgia (SUBJECT PROPERTY #2).

[D. 168-1, ¶ 38(a)]. The R&R concludes that "the affidavit incorrectly states that Thomas was the one who provided the address" because "the quoted conversation attributes the statement of the address to Defendant Fitts." [D. 239, p. 9]. Noting Agent Barto's assertion that drug traffickers "'use guarded, vague or coded language when discussing and planning the distribution of controlled substances' in order to throw off police," the R&R found that "Thomas could have said 'tell Shawn' to disguise the fact that he was talking to Shawn, and Fitts could have used a cellular telephone not linked to him in order to avoid being connected with the drug trafficking organization." [*Id.* (citing D. 168-1, ¶ 8(l))]. Though "the affidavit is silent on how the agent(s) monitoring the calls intercepted from Thomas's phone knew that Defendant Fitts was speaking," the R&R concludes that, "even if it was not Fitts, whoever was on the call with Thomas identified

Fitts's address as the location to which the source should deliver the drugs. This creates a link between the Defendant's address and evidence of drug trafficking." [*Id.*, p. 9–10].

Fitts counters this conclusion, arguing that "[n]o other facts were given to provide context to the conversation, yet the affiant claimed that based on her training, experience, and knowledge of this investigation somehow the above conversation was about their source of supply arriving in town and needing the address to deliver drugs. [D. 254, p. 7]. Further, Fitts argues that, even if the conversation was between Thomas and Fitts, "this fact is so devoid of any context that it is impossible to create a 'nexus between the place to be searched and the evidence sought' just on a conversation between brothers discussing Fitts' address." [*Id.* (citing *Laughton*, 409 F.3d at 747)]. Specifically, Fitts argues that, in the call, "[t]here is no mention of any drug sale, supplying drugs, or even the name of who they are discussing to provide context as to whether the person being discussed is a known drug dealer, a friend, or a family member and whether they are talking about a drug deal or a simple get-together between friends or family." [*Id.*]. Without an "additional, corroborating fact 'connecting [Mr. Fitts] to drug trafficking,'" Fitts contends that "'the affidavit . . . cannot support the inference that evidence of wrongdoing would be found in [his] home." [*Id.* (citing *McPhearson*, 469 F.3d at 524–25)].

Further still, Fitts argues that, not only is the affidavit *silent* on the basis for the affiant's interpretation that Fitts was speaking, the affiant was *incorrect* in that interpretation. Fitts contends that the R&R improperly handles this component "because the reason why the agents were silent as to how they knew it was Fitts was because the affiant *intentionally misrepresented* to the Magistrate signing the warrant that the conversation was between Fitts and Thomas." [*Id.*, p. 8 (emphasis added)]. Fitts likewise asserts that that "[t]he affiant knew or must have known that there was not probable cause sufficient to issue the warrant, and misconstrued the facts in order to

13

try and create a more compelling—yet still weak—nexus between Fitts and the alleged criminal activity." [*Id.*, p. 9].  To support this argument, Fitts includes a copy of the audio recording along with a "Linesheet" transcription of the call for the Court to compare. [D. 254-1, 254-2].

Fitts's challenge to the R&R's handling of the April 20, 2019 call is also unpersuasive. First and foremost, this accusation of *intentional* misrepresentation by Agent Barto appears for the first time in his objections to the R&R.  Fitts's motion to suppress is silent regarding "intentional misrepresentations" and this recording and Linesheet were not submitted to the Magistrate Judge. While Fitts's counsel did state that "it's been a misrepresentation to the Court that there is a conversation between these two brothers," during oral argument on the motion to suppress, counsel later stated that, "I'm not here to say that the affidavit was done dishonest, but it clearly was reckless." [D. 245, pp. 23, 27; D. 239, p. 12 n. 3].  "[A]bsent compelling reasons," parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)); *see also United States v. McGahee*, No. 1:18-CR-161, 2019 WL 5589046, at *2 (E.D. Tenn. Oct. 30, 2019).  The Court cannot identify any compelling reason that Fitts would now raise his new argument that the affiant *intentionally misrepresented* information in her affidavit.

Second, when a court reviews the sufficiency of the evidence supporting probable cause, the review "is limited to the information presented in the four corners of the affidavit." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *see also Brooks*, 594 F.3d at 492 ("[I]nformation known to the officer but not to conveyed to the magistrate is irrelevant."); *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).  Fitts asks the Court to look beyond the affidavit.  In doing so, Fitts impliedly requests a *Franks* hearing, as provided for in *Franks v.*

14

*Delaware*, 438 U.S. 154 (1978), or, at the very least, raises a *Franks* argument. Though a reviewing court is generally limited to the four corners of the affidavit, *Coffee*, 434 F.3d at 892, a *Franks* hearing permits a defendant to present evidence concerning the veracity of challenged statements in a search warrant affidavit. *See United States v. Orrick*, No. 2:16-CR-64, 2016 WL 6788004, at *7 (E.D. Tenn. Oct. 25, 2016), *report and recommendation adopted*, No. 2:16-CR-64, 2016 WL 6781794 (E.D. Tenn. Nov. 15, 2016). To qualify for this exceptional procedure, "a defendant must make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [ ] the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (citations omitted). Even if the statements are false, "a *Franks* hearing is warranted" only "[i]f, when the alleged false statement is put aside, the affidavit no longer provides the court with probable cause." *Id.* at 504–05.[3]

Here, Fitts has not made a substantial preliminary showing that the affiant's identification of Fitts as the speaker was knowingly and intentionally false.[4] Fitts argues that a comparison between the audio recording of the April 20 call and the Linesheet shows that the "false" identification was intentional. Specifically, Fitts asserts that the agents falsely transcribe that, when Thomas tells the answering unidentified male to "tell Shawn" that an address is needed, the

_____

[3] Fitts's accusation of intentional misrepresentation could be construed either as a misrepresentation by omission or commission. The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001)). Because Fitts's argument fails under the lower bar set for misrepresentation by commission, the Court need not alternatively explore any potential omission.

[4] In his objections, Fitts does not specifically accuse the affiant or the transcribing agents of reckless disregard for the truth but did use the word "reckless" during oral argument before Judge Poplin. In this context, courts employ a subjective test for reckless disregard for the truth. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (citing *United States v. Cican*, 63 F. App'x 832, 835–36 (6th Cir. 2003); *United States v. Colquitt*, 604 F. App'x 424, 429–30 (6th Cir. 2015)). "A law enforcement officer's statement is only considered to be issued with 'reckless disregard for the truth' if a defendant shows that the affiant subjectively 'entertain[ed] serious doubts as to the truth of his [or her] allegations.'" *Id.* (quoting *Cican*, 63 F. App'x at 836). Fitts has not made a showing sufficient to support that a *Franks* hearing on the basis of reckless disregard for the truth of the speaker's identity.

15

unidentified male says, "Talking to him right now," and a third person identified as Fitts subsequently gets on the phone. [D. 254, p. 9 (citing D. 254-2)]. Instead, Fitts suggests that the audio recording is "abundantly clear" that the unidentified male never states that he is talking to Fitts or that a third male subsequently gets on the phone. [*Id.*]. To be sure, the audio recording of the call is not exceptionally clear, but the Court does not agree with Fitts's conclusions after comparing the audio recording to the Linesheet. More importantly, these items do not make a showing, let alone a substantial showing, that the transcribing agents or the affiant "*intentionally* misrepresented*" that Fitts is the one speaking in the latter portion of the call, and mere "[a]llegations of negligence or innocent mistake are insufficient" to warrant a *Franks* hearing. *Franks*, 438 U.S. at 171. Further, even if the supposed material misrepresentation—that Fitts was the individual that states the address—is omitted, the speaker still instructs Thomas: "Tell him 5571. You can give him the 5571 Hickory." [D. 168-1, ¶ 38]. As a result, the call's contribution to the nexus established in the affidavit between the illegal activity and *the place to be searched* is not lost, regardless of who is speaking.

Lastly, while words of the call itself do not contain an explicit mention of drugs, it was only one ingredient in the affidavit's mix. The mix on was also made up of numerous calls and texts, informant information, packaging materials that tested positive for the presence of cocaine, and more. Within the totality of the circumstances, this call contributes to a connection between the drug trafficking conspiracy and 5571 Hickory Stone Drive. Yet again, "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *Christian*, 925 F.3d at 311 (quoting *Wesby*, 138 S. Ct. at 589).

In short, Fitts, improperly and for the first time, asks the Court to look beyond the four corners of the affidavit. Because Fitts has not provided a compelling reason for the Court to

consider the new argument and evidence at this stage or demonstrated entitlement to a *Franks* inquiry, the Court will not do so. Even if the Court did peer behind the affidavit and omitted the allegedly false assertion that Fitts is speaking during the April 20, 2019 call, the speaker still identifies "5571 Hickory." The April 20, 2019 call, which likely pertained to a delivery of drugs to "5571 Hickory," contributes to the nexus between 5571 Hickory Stone Drive and the suspected illegal activity.

### d. Totality of the Circumstances

"The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" [D. 239, p. 10 (citing *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016))]. The R&R found that the March 2 and March 12, 2019 text messages sent from Fitts's "house or curtilage" involving drugs and drug proceeds and the April 20 call identifying Fitts's residence provided specific and concrete connections. [*Id.*]. Consequently, the R&R concluded that these connections, in conjunction with Agent Barto's knowledge of the investigation, provided probable cause to believe that evidence of drug trafficking would be found at 5571 Hickory Stone Drive, Fitts's residence.

Fitts, after partitioning and challenging each connection, counters that the affidavit "simply list[s] the address of the premises to be searched, a summary of the deputy's professional experience, and [three] acontextual allegations against [Mr. Fitts.]." [D. 254, p. 9 (citing *Laughton*, 409 F.3d at 751)]. Consequently, Fitts objects to the finding that the affidavit supplied probable cause.

The Court agrees with the findings contained in the R&R and likewise concludes that the affidavit provided probable cause to believe that evidence of drug trafficking would be found at 5571 Hickory Stone Drive, Fitts's residence. "Viewing the 'totality of the circumstances' . . .

through the 'lens of common sense,' as the Supreme Court has instructed, . . . the conclusion is inescapable: there was probable cause to believe that a search of [5571 Hickory Stone Drive] would uncover evidence of drug trafficking." *Christian*, 925 F.3d at 309–10. "Most readers of the affidavit would have been surprised if it did not." *Id.* Fitts's first objection is overruled.

## B. Objection 2: Good Faith Exception

Fitts also objects to the R&R's conclusion that, even if the affidavit did not provide probable cause, the good faith exception of *United States v. Leon* would save the evidence from the exclusionary rule. 468 U.S. 897 (1984).

### 1. Standard

"The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible." *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000); *see also Mapp v. Ohio*, 367 U.S. 643, 654 (1961) (holding that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court"); *Weeks v. United States*, 232 U.S. 383, 398–99 (1914) (establishing the exclusionary rule as the remedy for violations of the Fourth Amendment). However, the exclusion of evidence is "a judicially created rule . . . 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Herring v. United States*, 555 U.S. 135, 140 (2009) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Consequently, even when a search warrant affidavit lacks probable cause, the Supreme Court has "limit[ed] suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 907). "Only when law enforcement officials operate in 'deliberate, reckless, or grossly

18

negligent disregard for Fourth Amendment rights' will the 'heavy toll' of suppression 'pay its way.'" *Id.* at 497 (quoting *Davis v. United States*, 564 U.S. 229, 237–38 (2011)).

This means that evidence will only be suppressed if "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's decision." *Id.* at 496 (quoting *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008)); *see Leon*, 468 U.S. at 923 n.23. Because an officer's reliance on the warrant "must be objectively reasonable," the good faith exception does not apply in four circumstances: (1) when the affiant misleads the issuing judge with false information in the affidavit; (2) when the judge "wholly abandon[s]" his or her judicial role and acts as an extension of the police; (3) when the affidavit is totally lacking in any "indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is deficient on its face such "that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 922–23. Here, Fitts previously argued that the affidavit was totally lacking in any indicia of probable cause, but now also accuses the affiant of intentionally misleading the issuing judge. As the Court has already foreclosed this new argument, the Court will address Fitts's argument that the R&R improperly concludes that affidavit contains enough indicia of probable cause for the good faith exception to apply.

An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a "bare bones" affidavit. *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (citing *White*, 874 F.3d at 498). The "bare bones" label is reserved for an affidavit "that merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (citing *Christian*, 925 F.3d at 312). Consequently, "[a]n affidavit need only present '*some* connection, regardless of how remote it may have been,'" *Christian*, 925 F.3d at 313 (citing *White*, 874 F.3d

490, 497 (6th Cir. 2017), "or, in other words, establish a 'minimally sufficient nexus between the illegal activity and the place to be searched,'" *id.* (citing *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016), "to avoid the bare-bones designation and thus be one upon which an officer can rely in good faith." *Id.*

### 2. Application

Here, Fitts analogized the affidavit in this case to the affidavit in *United States v. Laughton*. 409 F.3d 744, 749–51 (6th Cir. 2005). The R&R found the four-paragraph affidavit in *Laughton* distinguishable from the affidavit at hand. Noting that the affidavit is detailed, establishing the drug conspiracy through geolocation data and intercepted calls and text messages, the R&R concludes that the affidavit sufficiently links the drug trafficking to Fitts's residence, unlike the "acontextual" information in *Laughton*. [D. 239, p. 13]. As a result, the R&R finds that the affidavit is not "bare bones" and the good faith exception would apply to save the evidence from suppression, even in the absence of probable cause.

Fitts disagrees, arguing that "[t]he Magistrate is correct if looking at the affidavit as it applies to the other defendants, but when viewing the evidence against Fitts it is clear that the alleged evidence is against Fitts contains nothing more than 'suspicions, beliefs, [and] conclusions without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" [D. 254, p. 11 (citing *Laughton*, 409 F.3d at 748). Fitts again argues that "the only evidence against Fitts are text messages sent by his brother when he was in the vicinity of Fitts's address and a phone conversation that he wasn't even involved in that made no mention of drug activity." [D. 254, p. 11 (citing D. 168-1)].

Fitts's second objection is unfounded. Even though *Laughton*'s four-paragraph affidavit "require[d] a number of inferences, even inferences drawn upon inferences, in order to support

objectively reasonable reliance by an officer executing the resulting warrant," *Laughton*, 409 F.3d at 750, "probable cause determinations necessarily involve inferences, and inferences are perfectly acceptable provided that they are based on facts in the affidavit." *United States v. Hython*, 443 F.3d 480, 489 (6th Cir. 2006). Even still, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (emphasis in original) (quoting *White*, 874 F.3d at 497).

Here, the affidavit in this case contained numerous facts that detailed the workings of a drug conspiracy. The affidavit outlined controlled buys, a confidential source, testing of drugs and packing materials that confirmed the presence of cocaine on several occasions, wire taps and geolocation date for phones utilized in the conspiracy by several individuals and surveillance that observed likely deliveries of drugs. Moreover, the affidavit provided factual evidence that connected that conspiracy to 5571 Hickory Stone Drive. The affidavit showed that, on two occasions, Thomas communicated about drugs or drug proceeds through text messages sent "from the vicinity" of 5571 Hickory Stone Drive—a description used for ease of communication rather than recounting precise GPS coordinates and margins of error. During a subsequent call on a phone used previously for drug-related communication, Thomas is instructed to give an individual the address "5571 Hickory." Further, the affidavit overlays these facts with interpretation offered by Agent Barto based on her experience as a law enforcement officer. In short, even if the affidavit did not establish probable cause, it did "establish a 'minimally sufficient nexus between" the drug trafficking conspiracy and evidence of it and 5571 Hickory Stone Drive. Fitts's second objection is overruled.

## III. Conclusion

After a careful review of the record, the court is in agreement with Judge Poplin's recommendation that Mr. Fitts's motion to suppress be denied. Accordingly, the court **ACCEPTS IN WHOLE** the Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b). It is **ORDERED**, for the reasons stated in the Report and Recommendation, which the court adopts and incorporates into its ruling, that Defendant's motion to suppress [D. 167] is **DENIED**.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

22